I'll keep the introductions brief. Each side will get 15 minutes to argue. The appellant has the privilege of taking part of that 15 minutes and reserving it for rebuttal. We've read your briefs. We've discussed the case preliminarily. We've done our own independent research, so we're pretty prepared. You really don't need to repeat for us what's already in your briefs. So with that, we can go ahead and get started. Madam Clerk, please call the case. Ray Peltier. Michael Fuller appearing before appellants. Darlene Pescecchini appearing for appellee. All right. Good morning, Mr. Fuller. Would you like to reserve some time for rebuttal? Five minutes, Your Honor. Okay, very good. It's sort of your responsibility to watch the clock and keep track of that time, but I will try to remind you when we get there. So please proceed. Thank you, Your Honors. I want to start with a matter that was raised in the response brief, and that is seeking proportional costs against Bryce Peltier. I just want to point out the only appellate brief was filed for appellant, I'm blanking on her name, his wife, essentially. He received a favorable, he was a prevailing party in the underlying case. The notice of appeal did have his name on it. It wasn't because he intended to appeal a favorable ruling. Ms. Peltier is the only appellant who filed a brief, and so to the extent he's even considered an appellant, there wouldn't be any proportional costs if she lost. The family has had to move out of state to avoid collection they can't provide for their family if for 20 years they're going to be garnished 25% of their wages and they can't maintain a bank account or buy a house. If you allowed costs against him, should she not prevail, that would give the creditor jurisdiction to now go after him as well as her in their new state. So that's the only issue we would raise with regard to their response is that if we don't prevail that the costs be assessed only against Ms. Peltier. And then I've raised similar briefs, brought similar briefs before this panel pro bono as this case is, because it just strikes us as fundamentally unfair that when a debtor files bankruptcy, if they do it the day before a default judgment is entered, they have the right to appear before a bankruptcy judge and explain their state of mind and why they didn't commit fraud. But if it's the day after, they're essentially stuck in a debtor's prison of 20 years and that affects their family. And we just feel it's fundamentally unfair in this case, just to hit the high points Oregon law requires. Aren't our hands tied to some extent on that point? I mean, the Supreme Court has said that issue preclusion does apply in these cases. It definitely does. And so we just want to argue why you might consider in this case, sending it back to the bankruptcy judge just in light of the standards. And the last case I brought before this panel, I lost, but in that case, at least there was a jury trial and my clients were present with an attorney. In this case, in Oregon law, unlike a lot of states does apply issue preclusion to default judgments, but we feel under the facts of this case, it wouldn't be consistent with Oregon law. It's a strict standard for identity of issues and quote, the precise question must have been raised and determined in the former suit. And if there's any reasonable doubt, it should be resolved against collateral estoppel. And in this case, it just seems like there is, the bankruptcy court's own opinion says that the state court quote, did not necessarily agree with everything in the complaint and quote, the findings were quote of a summary nature. And the bankruptcy court highlighted that the focus of the hearing was quantifying damages. And that's consistent with the rule. And it's not in the record, but as a practitioner in state court, we're often called in to do prove up hearings. And it's a damages prove up hearing. If the damages are quantifiable, like on a contract, they just enter the judgment. And so our argument is just that by looking at what the state court determined, it's not clear exactly what factual issues were decided. It seemed heavily focused just on quantifying the damages. And it doesn't show that every element of any of the 523A claims that were brought were necessarily determined affirmatively by the state court. And so for that to have a simple hearing before the bankruptcy court and to be sent back with regard to Ms. Peltier and if she loses, she loses, but she has her side of the story about what happened and she just wants to be able to tell it. Thank you. All right. Thank you. Any questions from the panel? No. Okay. Thank you. Ms. Pacheczny, I want to thank you, first of all, for the phonetic indication of your name. That's very, very helpful. It's actually the first time I've heard that. It's a great idea. So thank you. Please go ahead. Thank you. Good morning, your honors. My name is, may it please the court, my name is Darlene Pacheczny, representing Van Loo Fiduciary. And just to clarify, Van Loo Fiduciary is in a representative capacity on behalf of the conservatorship estate for Mrs. Hudson, Leah Hudson, and the estate of John Hudson. And these are the parents of debtor Christine Peltier. So the court has, of course, read the significant underlying briefing. There is no doubt, there's uncontested that the trial court found Christine Peltier to have stolen money from her parents, to have financially abused her parents in a number of ways, with conduct that is detailed in the complaint, conduct that was further described and reinforced by oral testimony of Cindy Van Loo at the Prima Fascia hearing, and documentary evidence at the Prima Fascia hearing, which contrary to counsel statement, was not solely for the purpose of damages. There was, as Judge Hersher of the Bankruptcy Court notes in his oral ruling, that's part of the record in this case, the transcript of that ruling. There were plenty of questions being asked by both counsel and the judge that had to do with the underlying claims, specific claims, use of funds, etc. Let me ask you about that. I guess my concern is the judge relied on the fiduciary defalcation fraud part of 523A4, but I'm concerned that really none of the claims in the state court case required the state court to find the kind of fiduciary relationship, the limited kind of fiduciary relationship that 523A4 requires. For example, the elder abuse statute says it applies without regard to whether there's fiduciary duty. There was a breach of fiduciary duty claim, but there's lots of fiduciary duties in state law that aren't necessarily treated as fiduciary fraud for 523A4 purposes. Can you help me with that issue? Certainly. Specifically, the fiduciary relationship in this case, the sole fiduciary relationship in this case, was the power of attorney, that Christine Peltier acted as agent for her parents under a power of attorney for both of her parents. The time frame of the damages claim and the abuse of the power of attorney that lines up with when the power of attorney was in effect, and the power of attorneys themselves are in the record. So that is the sole fiduciary relationship, which is qualified as briefed, pretty, I think, thoroughly qualifies under the bankruptcy code as a fiduciary relationship. Right. But do we know that all of the money she took was taken under the authority of the power of attorney? Was there any other money that she could have taken without using the power of attorney? The money she took was all under the power of attorney as shown and described in the complaint. The bank account of which funds were taken, the Columbia Bank account, was solely in the name of John and Leah Hudson. The credit card use, those credit cards were in the name of John and Leah Hudson, one or the other or both. The other conduct that Judge Hersher did not ultimately rely on in making his ruling, but the other conduct described in the complaint and supported by the Prima Fascia hearing had to do with Christine Peltier executing documents, taking out loans on behalf of her for her parents on those loan documentation. It had to do with her managing business assets of the family business, Hudson Tax Services. And she was doing that in her representative capacity on behalf of her parents. Her parents were the primary owners of the Hudson Tax Services business. She also, there's allegations in the complaints regarding the ITREA contract fraud that related to the Hudson Tax Service business in which there was a forgery and falsification, impersonation of voices when the ITREA loan was being made out. So it is all of the conduct described in the timeframe where she had power of attorney, she was using that power of attorney and specifically using it including signing documents as power of attorney for or on accounts that were solely in her parents' names. So just to address briefly, the equity element here that counsel raised, fairness goes both ways and the Bullock Cord, which is the Bullock standard for the requisite intent for defalcation, you know, even states. It is also consistent with statutory exceptions to discharge that Congress normally confines to circumstances where strong special policy considerations such as the present for a fault argue for preserving the debt, thereby benefiting, for example, a typically more honest creditor. Now the same analysis of defalcation of fiduciary capacity that Bullock goes into, this idea that is this an act that a law-abiding person in that position would be so gross, such a gross deviation of the standard of conduct for a law-abiding person in that position. And it couldn't be more clear. If you are a fiduciary and you're entrusted, you're able to make withdrawals, charges on credit cards from bank accounts, sign loan documentations, etc. on behalf of another, you do not do that for yourself. You do not take the money for yourself. That is not your money. So this is all, you know, the idea of honest creditor and the purposes of considering equity, but also to protect creditors in such circumstances where the conduct of the debtor allows for non-discharge of debt. Also on the idea of equity, it is not a matter if this court reverses of going back to a simple hearing. We'll be starting in the bankruptcy court adversary case, you know, frankly, only the complaint, the answer, and summary judgment. So we will have a full proceeding if sent back to the adversary case. Mrs. Hudson, the surviving spouse, is unable to, of course, enforce the current judgment while this matter is pending on appeal. She's 82. She's in ill health. The purposes of recovery are for assets to go towards her support and care under the conservatorship and the guardianship for the rest of her life. So any delay is, I think, the court should consider the circumstances of that situation as well if we're talking about equity. I have another question for you. There's an unjust enrichment claim in the complaint, and an unjust enrichment claim standing alone would not support a 523A4 objection to discharge, correct? Correct. We're not arguing that. What are we to do with that if the court had three different claims on which to build its judgment, and one of them clearly would not support non-dischargeability? What are we to do with that? Well, I think the court limits its decisions as to what it finds of the remaining claims, breach of fiduciary duty, and if the court so chooses on de novo review to Judge Hirschner decided not to go that route. He did not expressly say in the negative. However, he found that the best rubric for his ruling in preserving that portion of the debt was defalcation in a fiduciary capacity, perhaps because there is a great deal more case law on that exception to discharge, what defalcation means, et cetera, and the breach of fiduciary context compared to extremely limited case law that we have on statutory financial elder abuse to the Oregon statute. And what we have has been briefed, and it's distinguishable. It hasn't actually been looked at regarding A4 in the Oregon court. So that perhaps a reason for taking the easier route with the best rubric in the underlying decision. Thank you. So counsel in that vein, the issue that always comes up with Bullock is whether the fiduciary was a professional, not a professional, was aware of their responsibility and whether in the context of summary judgment without evidence, we could determine that she knew or must have known that what she was doing was illegal and she was violating the law when she or her fiduciary obligations when she did this. Do you think that's evident from the record that's established just based on the determination that there was a breach of fiduciary duty without any other? Go ahead. I'm sorry. There is evidence, your honor, because in Oregon for a default judgment, the allegations of the complaint are deemed admitted. So the allegations of the complaint that have to do with the requisite intent of which because there are multiple claims, et cetera, they are cross-referenced within the complaint. It is a lengthy document, 30 pages. However, specifically there are allegations deemed admitted that Christine Peltier knew what she was doing and knew what was wrong. Okay. So, but is it based upon the number of transactions that she engaged in so that she there was some other evidence that you were able to adduce that as a fiduciary, she understood what her responsibilities were and she knew she was violating them when she did these things that you allege or that the court found were violations of her fiduciary responsibilities. The cumulative effect of all of these transactions certainly is egregious, but not dispositive. The act of taking the principal's money for her own benefit, for no benefit of the protected persons of the Hudson's and Cindy Vanloo representing Vanloo fiduciary services at the Prima Fascia hearing walked through the various exhibits and claims and she had investigated. She was credentialed as a professional conservator with experience in investigating financial elder abuse matters and improper accounting, misuse of funds, et cetera. And she testified on each point that she reviewed it and determined that the charges, conduct, taking of money, loan documentation or loans taken out were not for the benefit of the person. So your honor, just to conclude, again, don't over-review. This court has authority to go beyond. We don't have guideposts or beyond the defalcation in a fiduciary capacity. We don't have guideposts, unfortunately, for unpacking the elder abuse claim. And those are the primary claims to be focused on for issue preclusion in this case. So let me just ask you about that. When you said that you don't have guideposts, we could determine what the elements of an elder abuse claim are, taking or misappropriation, property of an elder person, property or money of an elder person, wrongfully. Those elements, if those elements are all satisfied by virtue of the final judgment, some of those elements or all of those elements would establish either embezzlement or larceny, either one, right? Indeed. And we do have good case law for Oregon. The Church v. Woods case is the seminal case unpacking the wrongful taking and the wrongful taking that Church v. Woods is focusing on improper motive or improper means is required to prove a wrongful taking under Oregon law. So while that language is not unpacked by a bankruptcy opinion in correlating, certainly the same kind of standards of intent that we're looking at that would qualify for either embezzlement or for larceny. The distinction being in one case, you came into possession of the property lawfully in the other case and then misappropriated it. In the other case, you stole it. You never had the right to it and you took it. Either one of those is satisfied under the elder abuse statute. Seemingly either one of those satisfies the requirements for 523.84. Exactly. So there is a lot of unpacking and nesting, but absolutely agree with that analysis. And to that point, the determination of what amount of the underlying judgment to be protected from discharge, Judge Hirchner's decision was more limited. He only found non-dischargeable against Christine Peltier of the 1,069,000 approximate number. There were additional, there's an additional amount of judgment against Christine Peltier found by the trial court. And we unpacked the, I'll briefly say the conclusion, we unpacked the damages adjustment. Why do the numbers differ and how do they line up? In the damages, amended damages exhibit that was presented to the trial court judge, that's ER 282, 281. She relied on that in part in making her ultimate ruling, signing the limited judgment. So if the court were to look back at the additional damages for which Judge Hirchner's ruling did not encapsulate, that information was presented. It's just a bit of cross-referencing and correlation to add up the numbers and work out matching. In conclusion, Your Honor, I'm out of time. Respectfully, we request affirming non-discharge and to the extent this court is looking de novo of expanding the applicable damages for non-dischargeability. And with finality also for housekeeping, if this court does reverse, we do want to point out that the claims against Bryce Peltier were dismissed because of the grant of summary judgment against Christine Peltier. So if sending it back to the lower court for a trial in the merits for the adversary proceeding, we'd like to be clear that we can return to our claims against Peltier as well. Thank you. Thank you. Mr. Fuller, back to you. I think you've got 10 or 11 minutes. There it is, 11 minutes. Go ahead, please. One of the reasons that it doesn't appear that the lower court's determinations were addressing the precise questions at issue under 523 is in part because there were, it was a scattershot complaint. There were a lot of different defendants. The equitable claim was against all of them equally. The court's finding was kind of a blanket finding, and it involved Bryce Peltier too, who couldn't under any facts be argued to have a fiduciary role of any type. He was just the husband. So just looking at the standard under Oregon law, the Inquis case, it's a strict standard for the identity of the precise issues, and it has to have been determined in the former suit. And this just seems like a case where precise isn't the right word to determine what was decided in the lower court. It's unprecise. And also, I just want to point out on the record that if we had got the call before the opposing counsel, we may well have been representing the creditor in this case. And this is not, I was not intending to argue that one party's moral and one's not. I'm simply arguing just for what we believe would be due process, which is a fair day in court for a debtor who hasn't got one yet. Thank you. Okay. Any questions from the panel? No. Okay. All right. Thank you very much. The matter is submitted and we'll get a decision out promptly. Thank you all. Thank you.
judges: Faris, Brand, Gan